## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ALAN E. MEYER, et al., ) | |
| ) | |
|       Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | No. 07-2230-CM |
| ) | |
| DAVID J. CHRISTIE, et al., ) | |
| ) | |
|       Defendants. ) | |

## MEMORANDUM AND ORDER

This dispute arises from an alleged oral joint venture/partnership agreement ("the Agreement") to construct, develop, and manage a mixed-use residential apartment complex in Junction City, Kansas. Plaintiffs Alan E. Meyer, John R. Pratt, and Dovetail Builders 2, LLC, brought this lawsuit against defendants David J. Christie, D.J. Christie, Inc., Alexander Glenn, and The Bluffs, LLC. Other defendants originally named in this suit have been dismissed. (Docs. 178, 218). Plaintiffs Meyer and Pratt allege breach of the partnership agreement, breach of fiduciary duties, and wrongful dissociation by defendants Christie and Glenn, and plaintiffs together assert unjust enrichment and civil conspiracy against all defendants. In addition to seeking a preliminary and permanent injunction and monetary relief, plaintiffs demand an accounting, and ask this court to impose a constructive trust on the property, as well as all profits, income, and benefits arising from it. Defendant The Bluffs counterclaims that plaintiffs' lawsuit constitutes a false and malicious lis pendens lien. The case comes before the court on defendants' Motion for Summary Judgment (Doc. 186), and plaintiffs' Motion for Partial Summary Judgment (Doc. 188). For the reasons below, the court denies defendants' motion for summary judgment, and grants in part and denies in part

plaintiffs' motion for summary judgment.

## I.      **Factual Background**[1]

Plaintiffs Alan Meyer and John Pratt are developers with residential and commercial development experience.  Meyer and Pratt have an ownership interest in Dovetail Builders 2, LLC, an Iowa limited liability company.  Defendants David J. Christie and Alexander Glenn are commercial developers.  Christie is the sole shareholder and owner of D.J. Christie, Inc., a commercial development company based in Overland Park, Kansas.

In early 2005, in response to community demands, Christie expressed interest in facilitating the development of a large scale residential project in Junction City.  An early March 2005 meeting ultimately followed, involving Christie, defendant Glenn, plaintiffs Meyer and Pratt, and others, to discuss the potential residential development and to visit potential development sites.  Plaintiffs Meyer and Pratt argue that they made an oral agreement to form a joint venture partnership with Christie and Glenn at this time.   Defendants argue that there was no such agreement.

There is no dispute that D.J. Christie, Inc., entered into a contract to purchase – and ultimately did purchase – land located at Goldenbelt and US Highway 77 in Junction City, for the development site ("Site").  Christie signed and approved a Memorandum of Understanding with the City of Junction City on July 5, 2005, to go forward with the project.  Shortly thereafter, Christie notified the City – and later Pratt – that he and Glenn were terminating their relationship with Meyer, Pratt, and Dovetail.  The stated basis for the termination was because Meyer had "allegedly

---

[1]  The court construes the facts in the light most favorable to the non-moving party pursuant to Fed. R. Civ. P. 56.  The parties have stipulated to many facts in this case, although many contentions remain controverted.  The court has combined the facts proposed by both parties, and included only those that are relevant, material, and supported by the record.

defaulted on a loan with a Kansas City bank," and because Dovetail "has misrepresented their experience and financial ability."

Subsequently, defendants filed Articles of Organization for defendant The Bluffs, LLC, with the Kansas Secretary of State.  Christie completed the purchase of the Site and assigned it to The Bluffs.  The Bluffs received a $4 million loan, and, in late 2005, Junction City and The Bluffs entered into a Development Agreement for the Bluffs Apartments, memorializing the City's commitment to provide $15 million in financial incentives to The Bluffs in connection with the development of the Bluffs Apartments.

In mid-February 2006, the The Bluffs' Operating Agreement  was amended to add a different party—not involved in this suit—as partners and part-owners of The Bluffs along with Christie and Glenn.

In early 2006, The Bluffs contracted with First Management, Inc. ("FMI") for FMI to serve as the general contractor for the development and construction of the Bluffs Apartments.  Phase IA of the Bluffs Apartments was completed in or about August 2007, and Phase 1B of the Bluffs Apartments is still under construction.  Beginning in February 2008, Phase IA of the Bluffs Apartments was advertised for sale, with an asking price of over $35 million.  Junction City has paid The Bluffs $8 million in financial incentives in connection with the development of Phase IA and Phase IB of the Bluffs Apartments.

As of May 28, 2008, pursuant to its construction contract with The Bluffs, FMI has earned nearly $1.5 million as the general contractor in connection with the development of the Bluffs Apartments.

Plaintiffs filed a complaint on May 30, 2007, and an amended complaint on January 3, 2008.  Both parties have filed motions for summary judgment.  (Docs. 186, 188.)

## II.     Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The filing of cross-motions for summary judgment does not change the standard of review. *James Barlow Family Ltd. P'ship v. David M. Munson Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997) ("Where, as here, the parties file cross motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts.").

## III.    Discussion

### A.     Defendants' Motion

Defendants claim they are entitled to summary judgment on each and every one of plaintiffs' claims. First, defendants argue that the plaintiffs are unable to raise a question of material fact as to the existence of a partnership or joint venture, and because each of their claims is based on the existence of such an agreement, the claims fail. Defendants allege that, even if there are questions of material fact as to the existence of a joint venture agreement, plaintiffs' claims fail because, as a matter of law, any such agreement is unenforceable. Defendants also allege that plaintiffs cannot present sufficient evidence to satisfy the elements of a cause of action for unjust enrichment; and that Dovetail Builders 2, LLC cannot maintain any cause of action against the Christie defendants because it is not registered to do business in the State of Kansas. For the following reasons, the court denies defendants' motion.

### 1.     Existence of Joint Venture Agreement

Although a joint venture is not identical with a partnership, it is regarded as similar and is governed by the same rules of law.  *Grannell v. Wakefield*, 242 P.2d 1075, 1083 (Kan. 1952). Kansas courts have generally stated that a joint venture is an association of two or more persons to carry out a single business enterprise for profit.  *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.*, 596 P.2d 816, 821–22 (Kan. 1979) (citations omitted).  The usual test of a partnership as between the parties to a joint venture is their intent to become partners.  A joint venture can exist only by the agreement of the parties, and such agreement may be found in the mutual acts and conduct of the parties.  *Id.*  (Citations omitted).  Among the acts or conduct which are indicative of a joint ventureare: (1) the joint ownership and control of property; (2) the sharing of expenses, profits and losses, and having and exercising some voice in determining the division of the net earnings; (3) a community of control over and active participation in the management and direction of the business enterprise; (4) the intention of the parties, express or implied; and (5) the fixing of salaries by joint agreement.  *Id*. at 823.  None of these factors alone is controlling of the determination.  *Id*.

Although uncontroverted facts establish that the parties did not jointly own or control property, nor did they clearly share any expenses, profits, or losses, this does not establish, as a matter of law, that there was no agreement.  Plaintiffs Meyer and Pratt have testified in deposition that, on March 4, 2005, they orally agreed with Christie and Glenn to form a partnership to pursue building The Bluffs; that as part of this agreement, they agreed to joint ownership of the partnership – named Junction City Partners – with Christie and Glenn; they agreed to share profits and losses of the joint venture on a 50/50 basis; and to employ defendant Dovetail Builders 2, LLC, as the general contractor for the project.

Defendants, on the other hand, assert that there was no meeting of the minds – there was

never a partnership agreement.

It is central to plaintiffs' claim that it establish an agreement existed between plaintiffs and defendants. *See* PIK–Civ. 4th 124.01-A (setting out elements of claim for breach of contract). An enforceable contract requires an agreement on all essential terms. *See*, *e.g.*, *Steele v. Harrison*, 552 P.2d 957, 962 (Kan. 1976) (holding that meeting of minds required to form binding contract). The intent of the parties to enter an agreement is a disputed material question of fact precluding summary judgment at the present time. *See United States v. Hess*, 194 F.3d 1164, 1174 (10th Cir. 1999) ("[W]here interpretation of a contract requires examination of extrinsic evidence to determine intent, and where more than one inference may be drawn therefrom, a question of fact is presented."). Defendants' arguments appear to have merit, but at this stage of the litigation, plaintiffs have come forward with enough to withstand summary judgment. That initial question—whether an agreement existed—is for a jury to decide, and judgment as a matter of law is not appropriate.

## 2.    Agreement Otherwise Unenforceable

This court is unconvinced by defendants' remaining arguments, all of which are premised on the assumption that a partnership agreement in fact existed. Defendants first suggest that any such agreement is unenforceable under the statute of frauds or for lack of consideration. Mutual promises or acceptance by one co-venturer of valuable services rendered by another in the development of a joint venture constitutes adequate consideration for an enforceable contract. *Potucek v. Blair*, 270 P.2d 240, 245 (Kan. 1954). Moreover, under Kansas law, it is well-settled that a contract of partnership may be entered without any particular formalities; a valid partnership may be created without any deed or writing, *Marsh v. Davis*, 6 P. 612, 615 (Kan. 1885);[2] and that performance of

---

[2] Compare this to oil and gas leases. The statute of frauds is inapplicable to an oral partnership agreement to engage in the business of procuring oil and gas leases despite the fact the

(continued...)

an agreement removes it from the statute of frauds, Kan. Stat. Ann. § 33-106; *Bank of Alton v. Tanaka*, 799 P.2d 1029, 1036–37 (Kan. 1990); *see also  Murphy v. Convey*, No. 90,125, 2004 WL 421991, at * 5 (Kan. Ct. App. March 5, 2004).  Nevertheless, defendants claim that the alleged agreement fell within the statute because it could not be performed within the space of one year. Kan. Stat. Ann. § 33-106.  Contrary to defendants' contention, the undisputed facts do not establish that the project, if any, was necessarily "not to be performed within the space of one year from the making thereof."  Kan. Stat. Ann. § 33-106; *see also Nutt v. Knutson*, 795 P.2d 30, 31 (Kan. 1989) (noting that contracts of uncertain duration are excluded from the statute of frauds, which covers only those contracts whose performance cannot possibly be completed within a year).  For each of these reasons, defendants have not established that they are entitled to summary judgment.  Here, genuine issues of fact concerning the existence and nature of the parties' alleged oral partnership agreement preclude summary judgment on its enforceability.

### 3.      Unjust Enrichment

Defendants assert that plaintiff Dovetail Builders 2, LLC cannot maintain any claims – including its claim for unjust enrichment – because it is not registered to do business in the state of Kansas.  This fact is not controverted.  Plaintiff Dovetail Builders 2, LLC, is an Iowa limited liability company.  It was not and is not registered to do business in Kansas.  Under Kansas law, a foreign limited liability company must register with the Secretary of State before doing business in the state of Kansas.  Failure to do so prevents that foreign company from maintaining any action or suit in the state.  Kan. Stat. Ann. § 17-76,121; 17-76,126; *see also Amp Management, LLC v.*

---

[2] (...continued)
Statute of Frauds applies to the leases themselves. *See Goben v. Barry*, 676 P.2d 90, 97 (Kan. 1984); *Potucek v. Blair*, 270 P.2d 240, Syl. ¶ 4 (Kan. 1954); *Bird v. Wilcox*, 180 P. 774 (Kan. 1919). Therefore, while the lease arrangement must be written, the contract to enter into a partnership to procure leases need not be.

*Scottsdale Ins. Co.*, 2007 WL 677633, at *1–2 ( D. Kan. Feb. 28, 2007).

However, plaintiffs assert that questions of fact remain as to whether Dovetail was "doing business" in Kansas within the meaning of the statute.   Kan. Stat. Ann. § 17-76,121a (listing activities that do not constitute doing business).  Plaintiffs allege that Dovetail had only "off-site" involvement with the project, constituting, "at most, 'conducting interstate commerce'" within the statutory exceptions.  Doc. 189, at 54; Kan. Stat. Ann. § 17-76,121a(a)(10).  This court concludes that defendants fail to establish that they are entitled to judgment as a matter of law on the question of capacity.

Defendants also assert that Meyer and Pratt cannot maintain a claim of unjust enrichment based on the uncontroverted facts.  The elements of an unjust enrichment claim are (1) a benefit conferred; (2) an appreciation of knowledge of the benefit by the recipient; and (3) the acceptance or retention of the benefit under circumstances making it inequitable to retain without payment for its value.  *See In re Estate of Sauer*, 156 P.3d 1204, 1220 (Kan. 2007).  Viewing the evidence and all reasonable inferences in the light most favorable to plaintiffs, the court determines that plaintiffs have come forward with enough to withstand summary judgment.  Plaintiffs, for instance, claim that numerous of the design elements incorporated in the ultimate site design and layout were ideas unique to their original proposals for the project.  Plaintiffs claim they lined up subcontractors and entered into a contract with at least one company who undertook work on the project.  Summary judgment is not appropriate on the claim of unjust enrichment.

### B.    Plaintiffs' Motion

Plaintiffs seek partial summary judgment on certain of defendants' affirmative defenses, all of which also assume that a partnership agreement existed, and which include: statute of frauds; lack of consideration; unilateral mistake; waiver and estoppel; Meyer's and Pratt's lack of standing under

-8-

Kan. Stat. Ann. § 56a-405; and Dovetail's inability to sue.  Plaintiffs also assert that summary

judgment is proper as to defendant The Bluffs' counterclaim for wrongful lis pendens lien.

### 1.     Statute of Frauds, Lack of Consideration

Plaintiffs seek summary judgment on defendants' affirmative defense of the statute of frauds,

and on defendants' assertion that the agreement, if one existed, fails for lack of consideration.  For

the reasons that defendants are not entitled to summary judgment on these arguments, plaintiffs are

also precluded.  Questions of fact remain as to the existence, the nature, and the enforceability of any

alleged agreement between the parties.

### 2.     Unilateral Mistake

Plaintiffs assert that, viewed in the light most favorable to defendants, there is no evidence

that defendants' alleged mistake as to plaintiffs' expertise, experience and financial ability was the

result of fraud committed by plaintiffs.  Defendants, on the other hand, assert that they are not

required to prove fraud, and that, regardless, material questions of fact exist as to whether plaintiffs

misled or withheld information from defendants regarding their expertise, experience and financial

ability.  The court agrees with defendants.  In order to raise the defense of unilateral mistake,

defendant need only establish that the mistaken fact goes to the basis of the agreement, and was

known by the other party. *Andres v. Claassen*, 714 P.2d 963, 969 (Kan. 1986); *see also Squires v.*

*Woodbury*, 621 P.2d 443 (Kan. Ct. App. 1980).  Here, defendants present evidence that Security

Savings Bank, F.S.B. – a former defendant in this case – informed Christie and Glenn that it would

be interested in providing them with a loan for use in purchasing the site, but not if Meyer and Pratt

were also parties to that loan.  Defendants learned that this was because the bank had placed a loan it

made to one ERP Roofing Products, LLC ("ERP") on its watch list; that collateral for the loan was

missing; and that the bank was undertaking an investigation into the missing collateral.  Meyer was a

personal guarantor of the ERP loan.  Plaintiffs' motion for summary judgment is denied in light of the factual disputes regarding whether plaintiff knew that defendants had a made a mistake with respect to the plaintiffs' financial ability.

### 3.    Waiver and estoppel

Defendants contend that plaintiffs cannot maintain a cause of action for wrongful dissociation pursuant to Kan. Stat. Ann. §56a-602 because, if a partnership existed, plaintiffs waived their rights to pursue claims arising from defendants' dissociation by failing to wind up the business. Plaintiffs first allege that these defenses were not properly pleaded.  The court finds that even if defendants' original answer lacked particularity, it did not violate Federal Rule of Civil Procedure 8(c); and does not now prejudice plaintiffs.  Plaintiffs maintain that summary judgment is appropriate on these defenses because dissolution and winding up under the Kansas Uniform Partnership Act ("KUPA") is not a prerequisite to a common-law breach of contract claim or a claim for wrongful dissociation.  The court agrees.  Although questions of fact remain about the existence, nature, and enforceability of an agreement or partnership, this court finds that plaintiffs are entitled to summary judgment on defendants' claim that, if a partnership existed, plaintiffs waived their right to assert claims against it by failing to wind up the business pursuant to Kan. Stat. Ann. § 56a-802. As a matter of law, the KUPA does not contain any such waiver provision.  *See* Kan. Stat. Ann. § 56a-101 *et seq.*

### 4.    Standing, Real Party in Interest (Plaintiffs Meyer and Pratt)

Plaintiffs seek summary judgment as to defendants' assertion that Meyer and Pratt are not the real parties in interest, *i.e.*, the proper parties to bring claims for a failed joint venture under Kan. Stat. Ann. § 56a-405.  Defendants allege that plaintiffs Meyer and Pratt formed Kansas Ventures, LLC, with the intent that it hold their interest in the alleged joint venture/partnership, and that, under

-10-

Kan. Stat. Ann. § 56a-405(a), only the partnership may bring an action for breach of the partnership agreement by a partner. Therefore, defendants allege that these unnamed parties are the real parties in interest. Plaintiffs Meyer and Pratt allege that the agreement was solely between the four individuals; Kansas Ventures was formed on a later date; and Meyer and Pratt are the real parties in interest.

Assuming, without deciding, that the parties agreed to be joint venturers and a partnership existed under the laws of Kansas, any dispute as to these facts is not material to resolution of the legal question before the court. Under Kan. Stat. Ann. § 56a-405(b), a "*partner* may maintain an action against . . . another partner for legal or equitable relief" in order to enforce the partner's rights under the partnership agreement; enforce the partner's rights under the KUPA; or enforce and protect the partner's rights interests arising independently of the partnership relationship. The "'real party in interest question is raised in [rare] instances between private parties where a plaintiff's interest is not easily discernible.'" *Fed. Deposit Ins. Corp. v. Bachman*, 894 F.2d 1233, 1235 (10th Cir. 1990) (citing *Malamud v. Sinclair Oil Corp.*, 521 F.2d 1142, 1147 (6th Cir. 1975); *see also K-B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1154 n.7 (10th Cir. 1985). Defendants have made insufficient allegations to withstand summary judgment on this issue. On the facts here, even viewed most favorably to defendants, there does not appear to this court to be a real party in interest issue at this time. Fed. R. Civ. P. 17. Noting that the issue is one that can be revisited at any time, the court grants plaintiffs' motion for partial summary judgment on this issue.

### 5        Capacity (Plaintiff Dovetail Builders 2, LLC)

Plaintiffs also seek summary judgment as to defendants' assertion that plaintiff Dovetail lacks the capacity to sue because it is not registered to do business in Kansas. For the reasons that defendants are not entitled to summary judgment on this claim, plaintiffs are also precluded.

Questions of fact remain as to whether Dovetail was "doing business" in the State of Kansas.

**6.    Defendants' Counterclaim for Wrongful Lis Pendens Lien**

Plaintiffs seek summary judgment on defendant The Bluffs's counterclaim that this lawsuit constitutes a false and malicious lis pendens lien on grounds that: (1) plaintiffs are immune from any liability arising from their lawsuit pursuant to Kansas's lis pendens provisions; and (2) defendant is unable to establish a genuine issue of material fact regarding an essential element of its counterclaim, namely, that the present lawsuit has had any deleterious effect on The Bluffs' title to the project or the site.

Kansas courts recognize an action for slander of title, which may arise from "'a false and malicious statement, oral or written, made in disparagement of a person's title to real or personal property, causing him injury.'" *LaBarge v. City of Concordia*, 927 P.2d 487, 492 (Kan. Ct. App. 1996) (citing *Safety Fed. Sav. & Loan Ass'n v. Thurston*, 648 P.2d 267 (Kan. Ct. App. 1982), citing 50 Am. Jur. 2d, Libel & Slander § 539, p. 1058).

However, there is no precedent for recognizing such an action in frustration of the Kansas lis pendens statute. Under Kansas law, when a claim is pending concerning real property, no interest can be acquired by a third person in the property as against the plaintiff's claim. Kan. Stat. Ann. § 60-2201. These Kansas lis pendens provisions apply to the subject of federal court action pending in the District of Kansas when the subject real property is located in Kansas. 28 U.S.C.A. § 1964; Kan. Stat. Ann. § 60-2201; *Geiger v. Espy*, 885 F. Supp. 231, 233 (D. Kan. 1995). Because material facts remain in dispute concerning plaintiffs' claim of ownership regarding the property, this court concludes that plaintiffs are immune from defendant The Bluffs's counterclaim. Moreover, even if the court were inclined to recognize defendant's claim, defendant has failed to come forward with any evidence of injury, an essential element of the claim. The court concludes that summary

-12-

judgment is appropriate on this claim.

**IT IS THEREFORE ORDERED** that plaintiffs' Motion for Partial Summary Judgment (Doc. 188) is granted in part and denied in part as set forth above.

**IT IS FURTHER ORDERED** that defendants' Motion for Summary Judgment (Doc. 186) is denied, as set forth above.

Dated this 10th day of February, 2009, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**