**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**


| | |
|---|---|
| **ALAN E. MEYER, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | **No. 07-2230-CM** |
| ) | |
| **DAVID J. CHRISTIE, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

**MEMORANDUM AND ORDER**

This dispute arose from an alleged oral joint venture/partnership agreement to construct,

develop, and manage a mixed-use residential apartment complex in Junction City, Kansas.  Plaintiffs

Alan E. Meyer, John R. Pratt, and Dovetail Builders 2, LLC, brought this lawsuit against defendants

David J. Christie, Alexander Glenn, D.J. Christie, Inc., and The Bluffs, LLC.  A jury trial was held

May 11, 2009, through May 21, 2009.  On May 21, a jury returned a verdict for plaintiffs on all

counts.  The jury awarded damages in the amount of $9,196,345 on plaintiffs' claims of breach of

the joint venture agreement, breach of fiduciary duties, wrongful dissociation, and civil conspiracy.

Additionally the jury found that defendants had been unjustly enriched in the amount of $5,500,000.

Plaintiffs elected to recover the award of damages over that of unjust enrichment.  The jury also

determined that plaintiffs were entitled to punitive damages.  On September 8, 2009, this court held

a punitive damages hearing and awarded nominal damages in the amount of $100.  The case is

before the court on the following post-trial motions:

- Defendants' Motion for Judgment as a Matter of Law or, Alternatively, for New Trial
  (Doc. 303);

- Separate Defendant The Bluffs, LLC's Supplemental Motion for Judgment as a Matter of Law, or, in the Alternative for New Trial (Doc. 326);

- Plaintiffs' Motion to Strike Separate Defendant The Bluffs, LLC's Supplemental Motion for Judgment as a Matter of Law, or, in the Alternative for New Trial (Doc. 328);

- Defendants David J. Christie, Alexander Glenn and D.J. Christie Inc.'s Renewed Motion to Stay any Proceedings to Enforce Judgment Pending Post Trial Motions and Appeal (Doc. 347);

- Defendants' [David J. Christie, Alexander Glenn and D.J. Christie, Inc.] Conditional Motion to Amend the Judgment (Doc. 349);

- Plaintiffs' Memorandum in Opposition to Defendants' Conditional Motion to Alter or Amend Judgment and Motion to Strike (Doc. 350);

- Separate Defendant The Bluffs, LLC's Renewed and Second Supplemental Motion for Judgment as a Matter of Law or, In the Alternative, For New Trial (Doc. 351);

- Defendants' [David J. Christie, Alexander Glenn and D.J. Christie, Inc.] Renewed Motion for Judgment as a Matter of Law or, Alternatively, For New Trial (Doc. 353); and

- Defendants' Motion to Stay any Proceedings to Enforce Judgment Pending Disposition of Posttrial Motions and Appeal (Doc. 301), which was left unresolved in part by this court's order dated October 13, 2009.

The factual background of this case has been well-documented in this court's prior orders, and need not be repeated here. Additional facts are set out as necessary in the discussion of each

motion or group of motions. Having carefully reviewed the briefing submitted and being fully

aware of the history of this case, including the evidence presented at trial, the court makes the

following rulings.

I.      **Defendants' Motion for Judgment as a Matter of Law or, Alternatively, for New Trial (Doc. 303); and Defendants' [David J. Christie, Alexander Glenn and D.J. Christie Inc.] Renewed Motion for Judgment as a Matter of Law or, Alternatively, For New Trial (Doc. 353).**

   A.    **Judgment as a Matter of Law**

Defendants collectively argue they are entitled to judgment as a matter of law pursuant to

Federal Rule of Civil Procedure 50(b) because (1) plaintiffs' claims, arising out of an oral joint

venture agreement, are barred by the statute of frauds; and because (2) plaintiffs failed to present

sufficient evidence from which a jury could find that (a) a joint venture was formed, (b) defendants

violated fiduciary duties, (c) defendants wrongfully dissociated, (d) there was a civil conspiracy, (e)

defendants were unjustly enriched, or (f) plaintiffs were entitled to punitive damages.

   *Legal Standard*

In reviewing a motion for judgment as a matter of law, this court must determine whether the

evidence, viewed in the light most favorable to the nonmoving party, presents a disagreement

sufficient to mandate submission to a jury or whether it is so one-sided that one party must prevail as

a matter of law. *Hinds v. Gen. Motors Corp.*, 988 F.2d 1039, 1045 (10th Cir. 1993). The court is

mindful that judgment as a matter of law should be "cautiously and sparingly granted." *Black v. M

& W Gear Co.*, 269 F.3d 1220, 1238 (10th Cir. 2001) (quoting *Weese v. Schukman*, 98 F.3d 542, 547

(10th Cir. 1996)). Granting such a motion is appropriate only if the evidence "points but one way

and is susceptible to no reasonable inferences supporting the party opposing the motion." *Sanjuan v.*

*IBP, Inc.*, 275 F.3d 1290, 1293 (10th Cir. 2002) (quotation omitted); *see also Freeman v. Gerber Prods. Co.*, 506 F. Supp. 2d 529, 534–35 (D. Kan. 2007). The court does not weigh the evidence, pass on the credibility of the witnesses, or substitute its conclusions for those of the jury. *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1241 (10th Cir. 2001) (quotation omitted). However, judgment as a matter of law must be entered if there is no legally sufficient evidentiary basis with respect to a claim or defense under the controlling law. *Roberts v. Progressive Independence, Inc.*, 183 F.3d 1215, 1219–20 (10th Cir. 1999) (citing *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1546 (10th Cir. 1996)).

### *Statute of Frauds*

Defendants' first ground, that the statute of frauds barred plaintiffs claims, was raised and rejected at the summary judgment stage, (Doc. 226, at 6–7)[1], and again by way of a Rule 50(a) motion at trial before the case was submitted to the jury. For the reasons set out in its summary judgment order, the court declines to grant judgment as a matter of law based on the statute of frauds. Defendants are correct that contracts for the sale of land or interest in land, and agreements not to be performed within one year from their making must be in writing to be enforceable. Kan. Stat. Ann. § 33-106. While D.J. Christie, Inc.'s contract for the purchase of the site needed to be written, the agreement among the parties to enter a partnership did not require any particular

---

[1] In that order, the court ruled that mutual promises or acceptance by one co-venturer of valuable services rendered by another in the development of a joint venture constitutes adequate consideration for an enforceable contract. *Potucek v. Blair*, 270 P.2d 240, 245 (Kan. 1954). And under Kansas law, it is well-settled that a contract of partnership may be entered without any particular formalities; a valid partnership may be created without any deed or writing, *Marsh v. Davis*, 6 P. 612, 615 (Kan. 1885); and that performance of an agreement removes it from the statute of frauds, Kan. Stat. Ann. § 33-106; *Bank of Alton v. Tanaka*, 799 P.2d 1029, 1036–37 (Kan. 1990); *see also Murphy v. Convey*, No. 90,125, 2004 WL 421991, at * 5 (Kan. Ct. App. March 5, 2004). The court also rejected defendants' claim that the alleged agreement fell within the statute because it could not be performed within the space of one year, Kan. Stat. Ann. § 33-106, because the undisputed facts do not establish that the project, if any, was necessarily "not to be performed within the space of one year from the making thereof." Kan. Stat. Ann. § 33-106; *see also Nutt v. Knutson*, 795 P.2d 30, 31 (Kan. 1989) (noting that contracts of uncertain duration are excluded from the statute of frauds, which covers only those contracts whose performance cannot possibly be completed within a year).

formality, even though one of the terms of that agreement was that D.J. Christie, Inc. would purchase the land for the site. *See In re Yan*, 381 B.R. 747 (N.D. Cal. 2007) (holding that the statute of frauds may not be a defense to the enforcement of an oral partnership agreement concerning real estate because the subject matter of the agreement is not title to property, but rather profits from the partnership enterprise).

### Existence of a Partnership/Joint Venture Agreement

When viewing the evidence in the light most favorable to plaintiffs, the court cannot agree that plaintiffs failed to present evidence sufficient to support the jury's finding that the parties had entered a joint venture agreement. The evidence in this case did not point only one way. As the court set out in its order on summary judgment, a joint venture is an association of two or more persons to carry out a single business enterprise for profit. *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.*, 596 P.2d 816, 821–22 (Kan. 1979) (citations omitted). The usual test of a partnership between the parties to a joint venture is their *intent* to become partners. Such intent may be evidenced by the mutual acts and conduct of the parties, including: (1) the joint ownership and control of property; (2) the sharing of expenses, profits and losses, and having and exercising some voice in determining the division of the net earnings; (3) a community of control over and active participation in the management and direction of the business enterprise; (4) the intention of the parties, express or implied; and (5) the fixing of salaries by joint agreement. *Id*. at 821–23. Although uncontroverted facts establish that the parties did not jointly own or control property, nor did they clearly share any expenses, profits, or losses, this does not establish, as a matter of law, that there was no agreement. The existence of an enforceable agreement, upon which all of plaintiffs' claims were based, came down to a credibility contest. Defendants Christie and Glenn met with plaintiffs Meyer and Pratt and others in Junction City, Kansas, on March 4, 2005, to discuss a

potential residential development and to visit potential development sites. Plaintiffs Meyer and Pratt argued that, at this time, they made an oral agreement to form a joint venture partnership with Christie and Glenn.

Defendants argued that there was no such agreement. Defendants had ample opportunity to argue—and did argue—that it defied common sense for the parties to have entered an enforceable, oral, multi-million dollar agreement on the first day of meeting each other at the site without having any assurance of the feasability of the project. Defendants asserted that they were merely doing due diligence on the project, with the thought that they might partner with plaintiffs on the project in the future.

However, plaintiffs offered evidence of the urgency involved, the fleeting nature of the opportunity, and their preparedness to go forward. (Trial Transcript, Day 2, at 53–73.) Plaintiffs offered evidence on their agreement on the site location, their decision to name the project "The Bluffs," to "do this 50/50," to form "Junction City Partners," and to have D.J. Christie, Inc., purchase the site and assign it to the partnership. They also offered evidence that the parties agreed the partnership would hire Dovetail Builders to be the general contractor. (Trial Transcript, Day 2, at 78–81.) According to plaintiffs, the parties formed a partnership on March 4, 2005, and agreed to a name, a location, and the roles that would be played in building "the crown jewel of Junction City." And they shook hands on it. (Trial Transcript, Day 2, at 81–82, 86, 89–90.) The jury believed plaintiffs. The court will not reweigh the evidence, pass on the credibility of the witnesses, or substitute its conclusions for those of the jury.

The jury's other findings flow from its conclusion that a partnership was formed. Upon defendants' motion, this court must determine whether there was a legally sufficient evidentiary basis to support those findings.

### *Civil Conspiracy*

Under Kansas law, the elements of civil conspiracy are two or more persons, an object to be accomplished, meeting of minds in object or cause of action, one or more unlawful overt acts, and damages as a proximate result. *State ex rel. Mays v. Ridenhour*, 811 P.2d 1220, 1226 (Kan. 1991). Civil conspiracy is not actionable without commission of an underlying tort. *See Stoldt v. City of Toronto*, 678 P.2d 153, 161 (Kan. 1984). In this case, the jury's verdict was based on the wrongful overt acts of breach of a fiduciary duty and/or unjust enrichment. Defendants argue that plaintiffs failed to offer any evidence of an agreement or a meeting of the minds between any defendants to engage in one or more unlawful acts.

At trial, Glenn testified that he and Christie had discussed not moving forward with the project (Trial Transcript, Day 7, at 1163–64), for a variety of reasons but particularly after a June 10, 2005, golf tournament in which they learned that Security Savings Bank would not lend money to a partnership containing Meyer, Pratt, or Dovetail. Glenn and Christie conferred by phone (Trial Transcript, Day 7, at 1212; Day 8, at 1303) and notified plaintiffs of the termination of their relationship forty days later. In that forty days, the Memorandum of Understanding ("MOU") was signed, securing written—although non-binding—evidence of the City's commitment for $15 million in incentives. (Trial Transcript, Day 7, at 1213–14.) Christie and Glenn cancelled a conference call scheduled for July 15, 2005, because they "were figuring out, you know, the—how we were going to terminate with Dovetail." (Trial Transcript, Day 7, at 1226.) Glenn testified it was Christie's decision to terminate the relationship with plaintiffs, and Glenn agreed with him. (Trial Transcript, Day 7, at 1228–29.)

Plaintiffs argue that the evidence establishes that, while defendants proceeded "full speed ahead" with plaintiffs in negotiating the MOU with the City of Junction City, defendants were

willfully stalling the negotiation of the operating agreement for the partnership. The day after Christie notified Pratt of the termination of the joint venture, defendants formed and organized The Bluffs, LLC. Shortly thereafter, D.J. Christie assigned the site to that LLC. (Trial Transcript, Day 8, at 1334–38.)

The court concludes that this evidence, although largely circumstantial, is sufficient to establish a meeting of the minds between Christie and Glenn to terminate the partnership before the completion of its objective. Judgment as a matter of law is not appropriate on this ground.

### *Unjust Enrichment*

Plaintiffs elected the jury's award of damages over unjust enrichment. Nevertheless, defendants argue that they are entitled to judgment as a matter of law on this claim. Defendants argue that plaintiffs failed to provide sufficient evidence that defendants knowingly accepted or retained a benefit from plaintiffs under circumstances that would make it inequitable to retain the benefit without payment for its value. Specifically, defendants assert there is no evidence that defendants knowingly used any work product of plaintiffs, including the site plan designs prepared by Kaw Valley engineering. Defendants assert that, even if Kaw Valley used Pratt's site design, there is no evidence that defendants knew of this, and it is undisputed that plaintiffs did not pay Kaw Valley for its geotechnical work.

The court finds that the evidence at trial, viewed in a light most favorable to the nonmoving parties, does not lead only to the conclusion suggested by defendants. On the contrary, plaintiffs offered evidence that, as soon as the partnership agreement was formed, plaintiffs started working on construction budgets, began discussions with survey and soil teams, and began putting together financing models with bank representatives. (Trial Transcript Day 2, at 90–101.) Meyer prepared a PowerPoint presentation that he and Christie presented to the City, and was involved in negotiating

and drafting the MOU with the City that led to the City's payment of $8 million in financial incentives to the project. (Trial Transcript, Day 6, at 860–61.) Pratt worked with Kaw Valley on the geotechnical work, and created a site plan used for the project. The day after plaintiffs were terminated, defendants signed the contract with Kaw Valley for engineering services. (Trial Transcript, Day 7, at 1187.)

Even if the jury accepted that plaintiffs did not enter a written contract with Kaw Valley or pay them directly for any work that Kaw Valley later performed for defendants, this does not lead to the inevitable conclusion that defendants were not unjustly enriched. Nor does the fact that plaintiffs refused defendants' offer to reimburse them out-of-pocket expenses "[undermine] any inference" that defendants were unjustly enriched. There was sufficient evidence to support a conclusion that defendants knowingly accepted or retained benefits conferred on them by plaintiffs' efforts on behalf of the partnership.

### Punitive Damages

Defendants argue that judgment as a matter of law is appropriate on plaintiffs' punitive damages claim because punitive damages are not available for breach of contract claims unless the defendant is liable for an independent tort. This court agrees with defendants' recitation of the law. *See Farrell v. Gen. Motors Corp.*, 815 P.2d 538, 549 (Kan. 1991). However, the evidence, viewed in the light most favorable to plaintiffs, supported the jury's findings of independent torts of breach of fiduciary duties and civil conspiracy, as discussed above.

Furthermore, defendants argue that plaintiffs failed to present sufficient evidence to allow the jury to conclude that there was clear and convincing evidence that defendants' conduct was willful, wanton, fraudulent, or malicious. Kan. Stat. Ann. § 60-3702(c); *Hysten v. Burlington N. Santa Fe Ry. Co.*, 530 F.3d 1260 (10th Cir. 2008). Clear and convincing evidence is that which shows that the

truth of the facts asserted is "highly probable." *See In re B.D.-Y.*, 187 P.3d 594, 601 (Kan. 2008).

The terms "malice," "willfullness" and "wantonness" carry specific meanings. The term "malice" is

defined as "a state of mind characterized by an intent to do a harmful act without a reasonable

justification or excuse." *Hysten*, 530 F.3d at 1276–77 (10th Cir. 2008) (citing P.I.K. Civ. 3d §

103.05; *Werdann v. Mel Hambelton Ford, Inc.*, 79 P.3d 1081, 1090 (Kan. Ct. App. 2003)). The

phrase "willful conduct" means an "act performed with a designed purpose or intent on the part of a

person to do wrong or to cause injury to another." *Id.* (citing P.I.K. Civ. 3d § 103.04; *Heckard v.

Martin*, 958 P.2d 665, 667 (Kan. Ct. App. 1998)). "Wanton" behavior, on the spectrum of

culpability, falls between mere negligence and willful misconduct, *Cerretti v. Flint Hills Rural Elec.

Coop. Ass'n*, 837 P.2d 330, 346 (Kan. 1992), and is found when the wrongdoer realizes the

imminence of danger and recklessly disregards or is indifferent to the consequences. *Id.*

Viewed in the light most favorable to plaintiffs, there is not only one possible conclusion.

Plaintiffs' evidence suggested that defendants terminated the relationship maliciously or willfully,

*i.e.*, with the intent to harm plaintiffs or without a reasonable justification or excuse. Although

defendants offered several justifications for the termination, including the problems associated with

Meyer's ERP loan and plaintiffs' questionable expertise in the area of large-scale residential

developments, plaintiffs offered much evidence suggesting that these justifications were not, in fact,

reasonable. For instance, Christie and Glenn were assured by Meyer and Duff that the ERP loan

was "okay" and "current." Christie and Glenn made no effort to confirm or deny the allegations

regarding the loan, instead moving "full speed ahead" with the MOU with the city to secure

financing incentives, and simultaneously stalling with plaintiffs on formalizing the operating

agreement for the partnership's LLC. Defendants publicized the termination of the relationship to

the city citing the unsubstantiated allegations of Meyer being in default on a loan nearly a week

before notifying plaintiffs of their decision.  Whether the reasons offered by defendants for their wrongful conduct were pretextual hinged on questions of credibility, and were properly submitted to the jury.  The court found that plaintiffs were entitled to an instruction on punitive damages[2]; the court instructed the jury on punitive damages, including the heightened burden carried by plaintiffs on that claim; and the jury determined that plaintiffs were entitled to such an award.[3]  For these reasons, and for the reasons set out in the record (Trial Transcript, Day 6, at 998–1018; Transcript of Hearing on Punitive Damages held September 8, 2009), the court concludes that legally sufficient evidence supported the jury's finding that plaintiffs were entitled to punitive damages.

### *Violation of Fiduciary Duties, Wrongful Dissociation, and Damages*

Plaintiffs assert that defendants waived their right to seek judgment as a matter of law as to plaintiffs' claims for breach of fiduciary duties, wrongful dissociation, and damages because they failed to raise these issues in their Rule 50(a) motion.  Regardless, plaintiffs assert that the evidence is legally sufficient to support the jury's findings on these issues.

Defendants' Rule 50(a) motion, filed after the close of plaintiffs' evidence, sought judgment as a matter of law regarding (1) the statute of frauds; (2) the existence of a joint venture; (3) unjust enrichment; (4) civil conspiracy; and (5) punitive damages.  (Doc. 298, at 2–11; Trial Transcript,

---

[2]  *See* Trial Transcript, Day 6, at 1017 ("[B]ased on the evidence presented and construed in the light most favorable to the plaintiffs, the court at this point is not willing to say that there is not a legally sufficient evidentiary basis for a reasonable jury to find for plaintiffs on their claim for punitive damages as reflected by the evidence that's been presented in plaintiffs' case-in-chief.")

[3]  K.S.A. 60-3702(a). In this case, the court employed the bifurcated approach of Kan. Stat. Ann. § 60-3702 for reasons related to judicial efficiency and related to the prejudicial nature of evidence relevant to a punitive damage award.  (*See* Trial Transcript, Day 6, at 1017-18.)  Although the question appears to be undecided, *Jones v. United Parcel Service, Inc.*, __ F. Supp. 2d __, No. 06-2143-JPO, 2008 WL 3884313 (D. Kan. Aug. 18, 2008); *Baker v. Equifax Credit Info. Svcs, Inc.*, No. 97,2214-KHV, 1998 WL 101829 (D. Kan. 1998), and the court's usual practice is to allow the jury to determine the amount, the court rejected plaintiffs' argument that the Seventh Amendment and Fed. R. Civ. P. 38(a) prevented the application of Kansas's bifurcated approach to punitive damages in diversity cases. In a separate proceeding to determine the amount of damages to be awarded, the court took into consideration the substantive arguments reiterated by defendants in the instant motion and found that only nominal damages were appropriate.

Day 6, at 997–1005.)  After resting their case, defendants renewed this Rule 50(a) motion,

incorporating the arguments raised in that motion and presented orally before the court.  (Trial

Transcript, Day 8, at 1446.)

Plaintiffs are correct that issues not raised in an initial Rule 50(a) motion may not be asserted

in a subsequent post-trial motion for judgment as a matter of law under Rule 50(b).  *See* Fed. R. Civ.

P. 50; *Hinds*, 988 F.2d at 1045.  And merely moving for a judgment as a matter of law is not

sufficient to preserve any and all issues that could have been, but were not raised in the motion.  *See*

*First Sec. Bank v. Taylor*, 964 F.2d 1053, 1056–57 (10th Cir. 1992).  It is undisputed that defendants

raised their claims for judgment as a matter of law regarding breach of fiduciary duty, wrongful

dissociation, and damages for the first time in this post-trial motion for judgment as a matter of law

pursuant to Rule 50(b).  Defendants' arguments relating to these claims are not properly before this

court.  *See Courtney v. Safelite Glass Corp.*, 811 F. Supp. 1466 (D. Kan. 1992) (denying defendant's

post-trial motion for judgment as a matter of law where issues raised were not raised in defendant's

Rule 50(a) motion).

Even if these issues had not been waived, the court  determines that there is evidence to

support the jury's findings on those issues.  *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210

F.3d 1207, 1229 (10th Cir. 2000) (setting out standard by which appellate court reviews district

court's denial of Rule 50(b) motion for judgment as a matter of law based on waiver) (citing *United*

*States v. Flintco, Inc.*, 143 F.3d 955, 967 (5th Cir. 1998); *House of Koscot Dev. Corp. v. Am. Line*

*Cosmetics, Inc.*, 468 F.2d 64, 68 n.5 (5th Cir. 1972)).

<u>Violation of Fiduciary Duties</u>

Under Kansas law, if a partnership agreement exists, then fiduciary duties arise as a matter of

law among the partners.  To support the finding of a violation of fiduciary duties, the evidence must

-12-

show that Christie and/or Glenn (1) violated their duty of loyalty to plaintiffs; or (2) violated their duty of care to plaintiffs in conducting the business of the joint venture by engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law; and (3) that plaintiffs suffered damages as a result. *See* Kan. Stat. Ann § 56a-404; P.I.K. Civ. 4th § 125.01, 125.02. The evidence, viewed most favorably to plaintiffs, suggested that Christie and/or Glenn misappropriated partnership opportunities by eliminating plaintiffs from the venture and securing new partners with whom they pursued the venture.

Wrongful Dissociation

The evidence supports the finding of wrongful dissociation where defendants Christie and Glenn unilaterally and expressly withdrew from the partnership before the particular undertaking for which it was created was completed. *See* Kan. Stat. Ann. § 56a-602(b) (stating that a partner has the power to dissociate at any time, rightfully or wrongfully, by express will. A partner's dissociation is wrongful only if it is in breach of an express provision of the partnership agreement; or, in the case of a joint venture/partnership for a definite term or particular undertaking, it occurs before the expiration of the term or the completion of the undertaking).

Damages

Defendants seek judgment as a matter of law on the jury's finding that plaintiffs sustained damages for "loss in connection with [their] interest in the joint venture" ($7,170,603) and "lost general contracting and in-house subcontracting profits" ($1,907,372). Defendants argue these damages are purely speculative, unsupported by legally sufficient evidence, and must be set aside.

It is within the virtually exclusive purview of the jury to evaluate credibility and fix damages. *See Bennett v. Longacre*, 774 F.2d 1024, 1028 (10th Cir. 1985). "Although a jury's determination of damages is ordinarily held in high esteem, the damages cannot be too conjectural and speculative to

-13-

form a sound basis for measurement." *Jones v. United Parcel Serv. Inc.*, __ F. Supp. 2d __, No. 06-2143-JPO, 2009 WL 2912510 (D. Kan. Sept. 9, 2009).  Damages do not, however, have to be established with absolute certainty.  It is enough if the evidence shows the extent of the damages as a matter of just and reasonable inference, although the result is only approximate.  *DeVries v. Starr*, 393 F.2d 9, 17 (10th Cir. 1968).

The testimony of plaintiffs' expert Gerald Teel regarding the values of the property (Trial Transcript, Day 6, at 849 *et seq.*), and Tony Ray Hausler's expert testimony regarding costs and profits (Trial Transcript, Day 6, at 959 *et seq.*) provided a sufficient evidentiary basis for the jury's damage award.  *See Brown v. Presbyterian Healthcare Servs.*, 101 F.3d 1324, 1330–31 (10th Cir. 1996); *Rainbow Travel Serv. v. Hilton Hotels Corp.*, 896 F.2d 1233, 1238-39 (10th Cir. 1990).  Specifically, Teel valued the two completed phases of the Bluffs Apartments at $31.1 million and $25.96 million.  (Trial Transcript, Day 6, at 895–96.)  Teel valued the 800 additional planned units, although unbuilt, at $75 million, although he opined that the undeveloped land, as it exists, was worth $1.7 million.  (Trial Transcript, Day 6, at 895–96, 921.)  Hausler opined that the total cost of the project was approximately $54 million.  Working from Teel's values, Hausler opined that the total profit associated with the two completed phases of The Bluffs was $12,837,396; that the estimated profit of the project, if sold, and with the 800 additional units completed, was $25,336,926.  (Trial Transcript, Day 6, at 973–978.)  Plaintiffs' theory of the case was that they were entitled to fifty percent of this profit, pursuant to the partnership agreement.  In other words, $12,668,463.  Plaintiff's expert Daniel Figert testified about the extent to which plaintiffs' work prior to termination was ultimately incorporated in the final Bluffs complex.  (*See* Trial Transcript, Day 5, at 782–96; Joint exhibits 826, 831, 73, 702, 810, 811, 816.)  Accepting the jury considered the $8 million in financial incentives ultimately provided by the City, the jury's award of unjust

-14-

enrichment is justified, and its damage award, based on the testimony of plaintiffs' experts, could be considered conservative.

On the other hand, defendants offered no expert of their own, and did very little to challenge the opinions of plaintiffs' experts. Indeed, defendants offered nothing on the issue of damages other than the testimony of Alex Glenn that the project was probably worth what they owed on it. (Trial Transcript, Day 7, at 1172–78.)

**B.** **New Trial**

***Legal Standard***

Motions for a new trial are committed to the sound discretion of the trial court. *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984); *Hinds*, 988 F.2d at 1046. A new trial may be granted in an action in which there has been a trial by jury "for any reason for which a new trial has hereforto been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). In reviewing a motion for new trial, the court must view the evidence in the light most favorable to the prevailing party. *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1284 (10th Cir. 1999). "The party seeking to set aside a jury verdict must demonstrate trial error which constitutes prejudicial error or that the verdict is not based on substantial evidence." *White v. Conoco, Inc.*, 710 F.2d 1442, 1443 (10th Cir. 1983). A new trial based upon an error of law is unwarranted unless that error affected the substantial rights of the parties, *Schmidt v. Medicalodges, Inc.*, 523 F. Supp. 2d 1256, 1258 (D. Kan. 2007), or affected "the essential fairness of the trial," *McDonough Power Equip., Inc.*, 464 U.S. at 553. A motion for a new trial on the ground that the verdict is against the weight of the evidence will not be granted unless the verdict is "clearly, decidedly, or overwhelmingly against the weight of the evidence.'" *Patton v. TIC United Corp.*, 77 F.3d 1235, 1242 (10th Cir. 1996) (quoting *Brown v. McGraw-Edison Co.*, 736 F.2d 609, 616–17 (10th Cir. 1984) (quotation omitted).

Defendants assert a number of grounds upon which they believe a new trial is required under Federal Rule of Civil Procedure 59. Several of these grounds mirror those offered and rejected in defendants' request for judgment as a matter of law. These grounds fall into four groups: findings against the weight of evidence; erroneous damages findings; error in the admission or exclusion of evidence; and error in instructing the jury.

### *Findings against the Great Weight of Evidence*

Defendants assert that the jury's answer to Question No. 1 on the verdict form, finding that Alan Meyer, John Pratt, David Christie, and Alexander Glenn formed a joint venture, is against the weight of the evidence. For the reasons discussed above, the court finds that the verdict is not clearly, decidedly, or overwhelmingly against the weight of the evidence.

Defendants also assert that the jury's answer to Question No. 2 (finding that defendants Christie and Glenn did not enter into the joint venture agreement due to a mistake concerning plaintiffs' experience or expertise or financial ability) is against the great weight of the evidence. There was evidence on both sides of the question of whether defendants entered a joint venture with plaintiffs based on a mistake. Defendants offered evidence that plaintiffs lacked experience in developing large-scale residential communities, and suggested that there was a problem with a loan associated with plaintiff Meyer. But there was evidence that plaintiffs were capable of pursuing and completing the project, financially and otherwise. (*See* Trial transcript, Day 2, at 51, 57–58; Day 5, at 740, *et seq*.) This evidence supports the verdict on defendants' affirmative defense of mistake, and the court will not reweigh this evidence or substitute its conclusions for those of the jury. The court finds that the verdict is not clearly, decidedly, or overwhelmingly against the weight of the evidence.

Defendants assert that the jury's answers to Question No. 3 (finding that defendants Christie

and Glenn breached the joint venture agreement with plaintiffs Meyer and Pratt); Question No. 4 (finding that Christie and Glenn violated fiduciary duties); Question No. 5 (finding that defendants Christie and Glenn wrongfully disassociated from the joint venture); Question No. 6 (finding that defendants conspired to wrongfully take the opportunity to develop The Bluffs Apartments for themselves and without plaintiffs); and Question No. 7 (finding that defendants Christie and Glenn participated in the conspiracy) are against the great weight of the evidence. For the reasons discussed above, the court finds that the jury's answers to these questions are not clearly, decidedly, or overwhelmingly against the weight of the evidence, and do not require a new trial.

### Damages

First, defendants assert a number of problems with the jury's answer to Question No. 8, and argue that the jury's finding that plaintiffs sustained a total of $9,196,345.00 in damages (based on predicate liability findings in Question Nos. 3 through 6 – breach of joint venture agreement, violation of fiduciary duties, wrongful dissociation, and civil conspiracy), requires a new trial. Specifically, defendants argue:

• The jury's finding that Meyer and Pratt lost $7,170,603 in connection with their interest in the joint venture is against the great weight of the evidence;

• The jury's finding that plaintiffs lost $1,907,372 in general contracting and inhouse subcontracting profits is against the great weight of the evidence;

• The jury's finding that plaintiffs had $118,370 in unreimbursed out of pocket expenses is against the great weight of the evidence;

• The damages found by the jury are overlapping; and/or

• The damages found by the jury are excessive.

As set out above, it is within the "virtually exclusive purview" of the jury to evaluate

-17-

credibility and fix damages. *See Bennett*, 774 F.2d at 1028. This court will not disturb a jury's award of damages on a claim of excessiveness unless the award is so unreasonable as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption, or other improper cause invaded the trial. *Sanjuan*, 160 F.3d at 1300. However, a verdict that is excessive but is not the result of passion, prejudice, or another improper cause does not necessitate a new trial. *Lewis v. Board of Sedgwick County Com'rs*, 140 F. Supp. 2d 1125 (D. Kan. 2001).

Viewed in the light most favorable to plaintiffs, the $118,370 in unreimbursed out-of-pocket expenses is supported by Pratt's testimony concerning expenses incurred between March 2005 and July 2005. (Trial Transcript, Day 4, at 497–502; *see also* Plaintiffs' Ex. Meyer 3604 *et seq.*, Joint Ex. 831.0165.) The $7,170,603 award for plaintiffs' interest in the project and the $1,907,372 in lost general contracting and in-house subcontracting profits is supported by, among other things, the testimony of plaintiffs' experts, as set out by the court in detail above. The court will not reweigh that evidence or substitute its own conclusions for that of the jury. In the court's view, the jury's award of damages in this case was generous. But this court is mindful that the sheer size of the award is not sufficient to warrant a new trial or remittitur, nor does it permit this court to substitute its judgment for that of the jury. "[A]bsent an award so excessive as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial, the jury's determination of the damages is considered inviolate." *Fitzgerald v. Mountain States Tel. And Tel. Co.*, 68 F.3d 1257, 1262 (10th Cir. 1995) (citing *Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 703 F.2d 1152, 1168 (10th Cir. 1981) (en banc), *cert. denied*, 464 U.S. 824 (1983)). Although "plainly excessive" damages could support an inference that bias, passion or prejudice influenced the award, *Fitzgerald*, 68 F.3d at 1262, the court cannot say that this award was plainly excessive or that it resulted from some improper consideration. *See Goico v.*

*Boeing Co.*, 358 F. Supp. 2d 1028, 1030 (D. Kan. 2005); *see also Century 21 Real Estate Corp. v.*

*Meraj Intern. Inv. Corp.*, 315 F.3d 1271, 1282 (10th Cir. 2003) (Despite concerns about windfall,

court affirms district court's denial of defendant's motion for new trial or remittitur where defendant

did almost nothing to undermine the assumptions on which plaintiff's expert based his projections

of lost profits, and called no expert of its own). "When a litigant is knocked out after tying both its

hands behind its back, a court may properly refuse to heed the litigant's plea to be given a second

chance for a fair fight." *Century 21 Real Estate Corp.*, 315 F.3d at 1283.

Next, defendants argue that, because one or more of the predicate liability findings is negated

as a matter of law and/or against the great weight of the evidence, defendants' substantial rights

were prejudiced because it is impossible to tell what portion of the damages found by the jury is

based on an invalid liability theory. For the reasons discussed above, no predicate liability finding is

negated, and the jury's answers to these questions are not clearly, decidedly, or overwhelmingly

against the weight of the evidence.

Defendants also assert that the jury's answer to Question No. 9 (finding that punitive

damages should be assessed against the defendants) should be set aside and a new trial granted,

because: (1) the jury's answer to the question is against the great weight of the evidence; and (2)

defendants' substantial rights were prejudiced because at least one of the predicate liability findings

is negated as a matter of law and/or against the great weight of the evidence. For the reasons

discussed above, the court determines that no predicate liability finding is negated, and the jury's

answers to these questions are not clearly, decidedly, or overwhelmingly against the weight of the

evidence. Defendants are not entitled to a new trial on this ground.

Defendants also challenge the jury's answer to Questions No. 10 (finding unjust enrichment)

and 11 (finding that the value of the benefit conferred by plaintiffs on defendants in connection with

the development of The Bluffs Apartments is $5,550,000) as being against the great weight of the evidence.  For the reasons discussed above, the court determines that the jury's finding of unjust enrichment and its damages award is not clearly, decidedly, or overwhelmingly against the weight of the evidence, and does not require a new trial.

### Error in Admission of Evidence

Defendants challenge the court's admission of evidence regarding (1) formation of Junction City Partners, LLC and the MOU executed by and between Junction City Partners, LLC and the City of Junction City, Kansas; and (2) a lawsuit filed by Security Savings over Meyer's obligations in connection with the ERP loan.  Defendants argue that the improper admission of this evidence prejudiced their substantial rights by probably causing the jury to render an improper verdict on plaintiffs' claims.

Trial court errors must be prejudicial and clearly erroneous, rather than harmless; no error in the admission or exclusion of evidence, or error in any ruling can be grounds for granting new trial unless the error or defect affects the substantial rights of party.  Fed. R. Civ. P. 59(a); *Tomson v. Stephan*, 705 F. Supp. 530, 533 (D. Kan. 1989) (citing *Rasmussen Drilling, Inc. v. Kerr-McGee Nuclear Corp.*, 571 F.2d 1144, 1148–49 (10th Cir. 1978)).

#### Junction City Partners, LLC

Defendants sought a pretrial ruling to exclude evidence regarding plaintiffs' formation of Junction City Partners, LLC; the execution or creation of any documents on behalf of Junction City Partners, LLC; and documents prepared by third parties identifying Junction City Partners, LLC. (*See* Doc. 242.)  The court found that whether the parties intended to enter an agreement or whether a partnership or joint venture agreement existed was a material issue in this case.  Although the unilateral actions of one party cannot establish the existence of a joint venture against an alleged

partner, evidence relevant to establish such intent is admissible. In this case, a fine distinction exists because plaintiffs assert that their unilateral communications and creation of the LLC were done in furtherance of the partnership agreement, and established plaintiffs' intent to fulfill their obligations under the partnership agreement. The court ruled that the fact that certain plaintiffs' acts were unilateral went to their weight rather than their admissibility. The MOU, which evidenced a non-binding understanding between "Junction City Partners, LLC" and the city of Junction City, was relevant to establish the intent of the parties to be or act as partners. Even accepting defendants' assertion that the name "Junction City Partners, LLC" or "JCP" was incorrect, and that the LLC referenced in the MOU was "Junction City Investors, LLC," a Christie LLC, plaintiffs' involvement in the drafting and negotiation of the MOU was relevant, and the evidence was properly admitted. Moreover, even if the evidence was admitted erroneously, the court finds that it did not affect defendants' substantial rights. Defendants had ample opportunity to—and did—argue against the significance of these documents, and explain away plaintiffs' contention that the LLC named in the MOU was actually the LLC created by the partnership among Meyer, Pratt, Christie, and Glenn.

Security Savings Bank Litigation

The court also finds no error in its exclusion of the lawsuit filed by Security Savings Bank in connection with Meyer's ERP loan. The court granted plaintiffs' pretrial motion in limine (Doc. 246), to exclude "reference to other litigation in which Plaintiffs, or any entity with which Plaintiffs were or are associated with, have been a party, including, without limitation, the litigation matter styled *Security Savings Bank, F.S.B. v. ERP Roofing Products, LLC*, *et al.*, No. LACV 067011, pending in the Iowa District Court." Nevertheless, the court cautioned plaintiffs that, if plaintiffs opened the door to this evidence, the court would revisit its ruling. In his trial testimony, Meyer asserted that, up until the time he and Pratt were cut out of the partnership, he was never in default

-21-

on any loan with any Kansas City bank. The court found that plaintiffs had not opened the door to evidence of the lawsuit, because the lawsuit was filed against Meyer well after defendants determined that his financial problems made him unsuitable as a partner in the development project, and that admission of evidence regarding the foreclosure suit would be more prejudicial than probative. Defendants were permitted to question Meyer's credibility short of introducing evidence of the lawsuit. The court finds no error in this ruling. Even if there was error, the court finds that it did not affect defendants' substantial rights. Admittedly, there were problems or irregularities with the loan. This evidence was before the jury. That defendants were not permitted to show the jury that a lawsuit had in fact been filed at a much later date regarding the ERP loan did not prejudice their ability to present their defense.

### Error in Instruction of Law

Although defendants proposed an offer and acceptance instruction as a necessary element for proof of plaintiffs' joint venture claim, the jury was not specifically instructed on offer and acceptance. Defendants now argue that the omission of this instruction prejudiced defendants' substantial right to have a properly-instructed jury.

The court reviews the instructions for "harmless error." Fed. R. Civ. P. 61. Thus, an error in omitting an instruction is harmless error if it does not affect the substantial rights of the parties or does not defeat substantial justice. *See Lusby v. T.G. & Y Stores, Inc. et al.*, 796 F.2d 1307, 1310 (10th Cir. 1986). In other words, the error is harmless if it could not have changed the result of the case or affected the essential fairness of the trial. *Id.* Further, instructional errors require reversal "only if the error is determined to have been prejudicial, based upon a review of the record as a whole." *Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.*, 175 F.3d 1221, 1236 (10th Cir. 1999). Conversely, an instructional error will not be discounted as harmless if the court is left with a

-22-

grave doubt as to whether the error had a substantial influence in the ultimate verdict.  *Id*.

Here, the court instructed the jury as to the definition of a joint venture, as set out in P.I.K. Civ. 4th § 107.26.  This is a correct statement of the law in Kansas.  *See George v. Cap. S. Mortg. Invs. Inc.,* 961 P.2d 32, 48 (Kan. 1998); *see also Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.*, 596 P.2d 816, 823 (Kan. 1979).  Defendants' proposed instruction, drawn from P.I.K. Civ. 4th § 124.04, Offer and Acceptance, would have informed the jury that "[a]n enforceable joint venture agreement requires an agreement on all essential terms between the parties.  The agreement is usually made by one party making an offer and the other party accepting it.  An offer and acceptance are commonly referred to as the acts by which the parties have a 'meeting of the minds.'" (Doc. 262, at 9.)

The proposed instruction was unnecessary because the formalities of offer and acceptance are not essential elements of plaintiffs' joint venture claim.  Such contract formalities are not required to create an joint venture.  The instruction given accurately stated the law and instructed the jury that "[a] joint venture can exist only by the agreement of the parties, and such an agreement may be found in the mutual acts and conduct of the parties."  (Doc. 293,  Instruction No. 13.)  Here, the jury was instructed that an agreement was required.  Error cannot be predicated on the refusal to give an instruction when its substance is adequately covered in other instructions.  *George*, 961 P.2d at 48.  The court concludes that the instructions as a whole fairly and accurately stated the law in light of the evidence presented in this case.  The court does not believe that including defendants' proposed instruction would have changed the result of the case.

### C.    Additional Issues

Defendants' reply brief raises additional issues upon which they claim they are entitled to judgment as a matter of law or in the alternative a new trial.  First, defendants argue that there is

insufficient evidence to establish that defendants' July 2005 termination of their relationship with plaintiffs "breached the 'joint venture agreement'"; and second, the court lacks jurisdiction to enter any judgment in favor of Dovetail Builders 2. (Doc. 321, at 1–2.) Plaintiffs properly, and with the court's leave, filed a surreply.

### *Breach*

As to their first argument, defendants assert that "[a]s a matter of law, a speculative agreement to develop . . . property if feasible does not create a partnership for a 'definite term or particular undertaking,'" and therefore, the partnership could be terminated at any time. The court agrees with defendants that a partnership or joint venture that is not for a definite term or particular undertaking can be unilaterally terminated at any time. Kan. Stat. Ann. § 56a-602(a). Here, the jury found that the parties committed themselves to a partnership for the purpose of developing a residential apartment complex in Junction City. Viewed in the light most favorable to plaintiffs, evidence supports the jury's finding—reflected in its verdict on wrongful dissociation—that this was a venture for a particular undertaking. *See supra*. The court therefore rejects defendants' argument.

### *Dovetail Builders 2, LLC*

Defendants previously suggested that Dovetail Builders 2 was not a proper party in this action because it lacked *capacity*: it was not registered to do business in the state of Kansas.[4] Defendants now assert that Dovetail was not a proper party in this action because it lacked *standing*: (1) it is not a party to the joint venture agreement; (2) its "lost profits" are not redressable injuries-

---

[4] Under Kansas law, a foreign limited liability company must register with the Secretary of State before doing business in the state of Kansas. Failure to do so prevents that foreign company from maintaining any action or suit in the state. Kan. Stat. Ann. § 17-76,121; 17-76,126; *see also Amp Mgmt., LLC v. Scottsdale Ins. Co.*, No. 06-4079-SAC, 2007 WL 677633, at *1–2 ( D. Kan. Feb. 28, 2007). At the summary judgment stage, the court concluded that questions of fact remained as to whether Dovetail was "doing business" in Kansas within the meaning of the statute. Kan. Stat. Ann. § 17-76,121a (listing activities that do not constitute doing business).

in-fact; and (3) its out-of-pocket expenses are not traceable to defendants.

Plaintiffs assert that Dovetail properly asserted its claim for unjust enrichment; Dovetail is a third-party beneficiary of the joint venture agreement, and that this theory of recovery was tried to the jury without objection from defendants; and defendants have waived their right to challenge the jury's award for costs in leasing equipment to construct The Bluffs.

Viewing the evidence in the light most favorable to plaintiffs, the court concludes that Dovetail had standing to pursue the lawsuit, that this court has jurisdiction to enter judgment in its favor, and that its lost profits in relation to the object of the partnership agreement are redressable injuries traceable to defendants. Defendants fail to establish that they are entitled to judgment as a matter of law on the post-trial question of standing.

For the reasons set out above, the court denies defendants' Motion for Judgment as a Matter of Law, or Alternatively, for New Trial (Doc. 303). In light of this ruling on defendants' motion, a ruling on the renewed motion is unnecessary. Because that motion seeks identical relief, it is denied as moot.

## II. Separate Defendant The Bluffs, LLC's Supplemental Motion for Judgment as a Matter of Law, or, in the Alternative for New Trial (Doc. 326); Plaintiffs' Motion to Strike (Doc. 328); and Separate Defendant The Bluffs, LLC's Renewed and Second Supplemental Motion for Judgment as a Matter of Law or, In the Alternative, For New Trial (Doc. 351)

As set out above, judgment as a matter of law must be entered if the evidence, viewed in the light most favorable to the nonmoving party, is so one-sided that one party must prevail as a matter of law, or if there is no legally sufficient evidentiary basis with respect to a claim or defense under the controlling law. *Roberts*, 183 F.3d at 1219–20. Such judgments should be "cautiously and

sparingly granted." *Black*, 269 F.3d at 1238. In reviewing the motion, the court does not weigh the evidence, pass on the credibility of the witnesses, or substitute its conclusions for those of the jury. *Turnbull*, 255 F.3d at 1241.

After the jury's verdict in this case, separate counsel entered an appearance for defendant The Bluffs, LLC. The Bluffs, LLC filed a petition in bankruptcy on June 25, 2009 (Doc. 314) and the automatic bankruptcy stay was lifted as to The Bluffs, LLC on July 27, 2009. On August 26, 2009, The Bluffs, LLC, filed a supplemental motion incorporating and adopting all arguments in the motion filed by its prior counsel, discussed above (Doc. 303), and setting out two additional grounds upon which it argues that it, The Bluffs, LLC, is entitled to judgment as a matter of law or, alternatively, a new trial on the jury's findings of civil conspiracy and unjust enrichment.

Specifically, The Bluffs, LLC argues that it cannot, as a matter of law, conspire with its owner; or be held liable for conspiring with the other defendants, and the verdict must therefore be set aside. Likewise, although plaintiffs elected the damage award over that of unjust enrichment, The Bluffs, LLC argues that it is entitled to judgment as a matter of law on that claim because: (1) the Bluffs, LLC did not come into existence until July 22, 2005; (2) plaintiffs could not have unjustly enriched The Bluffs, LLC prior to that date; and (3) there was no evidence that plaintiffs, having been terminated by Christie on July 21, 2005, did anything to enrich The Bluffs, LLC after that date.

Plaintiffs ask this court to strike The Bluffs, LLC's motion as either untimely under Rules 50(b) and/or 59(b); or improper under Local Rule 7.1, which permits only a motion, response, and reply. The court finds that the motion was timely filed: final judgment had not yet been entered, and the ten-day period set out in the rules had not been triggered. *See McCoy v. Coastal Mart, Inc.*, 207 F. Supp. 2d 1265 (D. Kan. 2002); *Wilkinson v. Shoney's, Inc.*, 958 P.2d 1157 (Kan. 1998).

-26-

Additionally, the court finds that the supplemental motion by separate defendant The Bluffs, LLC, is not a surreply, and does not violate Local Rule 7.1.

It does, however, raise for the first time new arguments not raised previously before this court in any earlier motion for directed verdict, or otherwise. *See FDIC*, 20 F.3d at 1076. *United Int'l. Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1228 (10th Cir. 2000). By way of footnote, plaintiffs argue these arguments are therefore waived. The court agrees that the arguments in defendants' motion could have and should have been raised much earlier in this case. The "fresh perspective" of new counsel, retained *after* the rendering of a multi-million dollar jury verdict, does not constitute a justifiable excuse for these late arguments. *See Courtney v. Safelite Glass Corp.*, 811 F. Supp. 1466 (D. Kan. 1992) (denying defendant's post-trial motion for judgment as a matter of law where issues raised were not raised in defendant's Rule 50(a) motion). Nor is the law cited by defendant so clear on these issues that it renders the verdict clearly or manifestly erroneous.[5] *See Smith v. Nw. Fin. Acceptance, Inc.*, 129 F.3d 1408, 1416 (10th Cir. 1997). The court denies plaintiffs' motion to strike (Doc. 328) and denies defendant The Bluffs, LLC's separate motion for judgment as a matter of law (Doc. 326). Because The Bluffs, LLC's renewed motion (Doc. 351) contains the same arguments and seeks identical relief, the court denies it as moot.

**III.     Defendants' [David J. Christie, Alexander Glenn and D.J. Christie Inc.] Conditional Motion to Amend the Judgment (Doc. 349) and plaintiffs' Motion to Strike filed as a Response (Doc. 350)**

---

[5] Defendant cites *Pizza Mgmt., Inc. v. Pizza Hut, Inc.*, 737 F. Supp. 1154 (D. Kan. 1990) for the proposition that the law clearly precludes a finding of conspiracy between a company and its owners or between closely related companies. In that case, the Tenth Circuit extended the rationale of a Sherman Act anti-trust case, *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984) (ruling that, for purposes liability under § 1 of the Sherman Act, a parent and its wholly owned subsidiary have a complete unity of interest), to the tort of conspiracy between a parent corporation and its wholly owned subsidiary. The case at bar is readily distinguishable.

In the event the court does not grant defendants' motion for Judgment as a Matter of Law/New Trial (Doc. 303) and set aside the judgment, defendants David J. Christie, Alexander Glenn and D.J. Christie, Inc. ask the court to eliminate three identifiable sums of damages as legally unrecoverable. Specifically, defendants argue that (1) damages for lost joint venture profits ($7,170,603) are too speculative; (2) damages for lost contracting profits ($1,907,372) are unenforceable because Dovetail 2 lacks standing in the case, and regardless, the damages are too speculative; (3) damages for Dovetail's out-of-pocket expenses ($46,817.99) are unenforceable because Dovetail 2 lacked standing. Defendants therefore ask the court to enter an amended judgment in the amount of $71,551.74.

By way of response, plaintiffs suggest that the motion is not a proper Rule 59(e) motion to amend, but is rather an improper supplement to defendants' original Rule 50(b) or 59(a) motion (Doc. 303) and merely rehashes arguments that were made or should have been made therein. Plaintiffs therefore ask this court to strike the motion. Alternatively, plaintiffs suggest that the motion should be denied because it fails to meet the burden under Rule 59(e).

A Rule 59(e) motion in a civil action stands on limited grounds. *See Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1186 n.5 (10th Cir. 2000). It provides the court with an opportunity to correct manifest errors of law or fact, to hear newly discovered evidence, or to consider a change in the law. *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). A Rule 59(e) motion does not make it appropriate to revisit issues already considered or to argue matters not raised in prior briefs. *Id.*; *see also Ufheil v. Bain*, No. 09-4047-SAC, 2009 WL 2760815, at *1 (D. Kan., Aug. 26, 2009).

The court has reviewed defendants' motion and finds no basis upon which to alter or amend the judgment. The court previously considered the facts noted by the plaintiff, and no manifest error

of law, newly discovered evidence, or change in the law is asserted or apparent. Moreover, as discussed above, there was substantial competent evidence to support the jury's verdict. This court will not set aside the jury's conclusions regarding the damages in this case. *See York v. InTrust Bank, N.A.*, 962 P.2d 405, 430 (Kan. 1998) (holding that whether remittitur should be granted hinges on whether there was substantial competent evidence to support the jury's verdict). The court therefore denies the motion. In light of this ruling, the court denies plaintiffs' motion to strike as moot.

**IV. Defendants' Motion To Stay Any Proceeding to Enforce Judgment Pending Disposition of Posttrial Motions and Appeal (Doc. 301) and Defendants David J. Christie, Alexander Glenn and D.J. Christie Inc.'s Renewed Motion to Stay any Proceedings to Enforce Judgment Pending Post Trial Motions and Appeal (Doc. 347)**

In an order dated October 13, 2009, this court granted defendants' motion in part by imposing a stay on the execution of judgment pending the disposition of the instant post-trial motions, but withheld a ruling on the issue of a bond amount and ordered additional briefing. The court has the authority to allow a stay of proceedings without a full supersedeas bond if it provides for the security of the judgment creditors. *Wilmer v. Bd. of County Comm'rs of Leavenworth County*, 844 F. Supp. 1414, 1419 (D. Kan. 1993). The court found that consideration of the factors, *Evolution, Inc., v. Sun Trust Bank*, No. 01-2409-CM, 2005 WL 1041348, at *1 (D. Kan. Jan. 10, 2005), weighed in favor of requiring a bond, but agreed that a bond of over $11 million, in satisfaction of Local Rule 62.2, was unreasonable. The parties' briefs left the court unable to determine whether a lien on the Bluffs apartments would adequately protect plaintiffs, and whether and what additional or alternative amount would be reasonable to require defendants to post in order to stay the judgment pending appeal. The court ordered briefing on the issue of an appropriate bond

amount.

The court has carefully reviewed the material submitted pursuant to its order, and finds that a lien on the Bluffs apartments would not adequately protect plaintiffs. Alternative security is required. Defendants' proposed additional security in the form of 12,500 shares of stock in First Financial Bancshares, currently valued at approximately $1,125,000, is a reasonable amount. Due to the volatility of the market, the court would require that the amount of $1,125,000 be deposited as security, rather than the 12,500 shares, which may or may not retain their value. Furthermore, the court is confident that, based on defendants' net worth, plaintiffs' interests would not be unduly endangered by allowing defendants to post a bond in the amount of $1,125,000 as security for plaintiffs in the event of an appeal.

A stay of execution on the judgment is imposed under Rule 62(d) pending appeal. Should defendants appeal, the court will enter an order staying enforcement pending appeal upon the court's approval of a reasonable supersedeas bond in the amount of $1,125,000.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Judgment as a Matter of Law or, Alternatively, for New Trial (Doc. 303) is denied.

**IT IS FURTHER ORDERED** that Defendants' Renewed Motion for Judgment as a Matter of Law or, Alternatively, For New Trial (Doc. 353), which seeks relief identical to that in the original motion (Doc. 303) is denied as moot.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike Separate Defendant The Bluffs, LLC's Supplemental Motion for Judgment as a Matter of Law, or, in the Alternative for New Trial (Doc. 328) is denied.

**IT IS FURTHER ORDERED** that Separate Defendant The Bluffs, LLC's Supplemental Motion for Judgment as a Matter of Law, or, in the Alternative for New Trial (Doc. 326) is denied.

**IT IS FURTHER ORDERED** that Separate Defendant The Bluffs, LLC's Renewed and Second Supplemental Motion for Judgment as a Matter of Law or, In the Alternative, For New Trial (Doc. 351), which seeks relief identical to that in the original motion (Doc. 326) is denied.

**IT IS FURTHER ORDERED** that Plaintiffs' Memorandum in Opposition to Defendants' Conditional Motion to Alter or Amend Judgment and Motion to Strike is denied (Doc. 350).

**IT IS FURTHER ORDERED** that Defendants' [David J. Christie, Alexander Glenn and D.J. Christie Inc] Conditional Motion to Amend the Judgment (Doc. 349) is denied.

**IT IS FURTHER ORDERED** that Defendants' Motion to Stay any Proceedings to Enforce Judgment Pending Disposition of Posttrial Motions and Appeal (Doc. 301), which was left unresolved in part by this court's order dated October 13, 2009, is granted as sets out in this order. Should defendants appeal, the court will enter an order staying enforcement pending appeal upon the court's approval of a supersedeas bond in the amount of $1,125,000.

**IT IS FURTHER ORDERED** that, in light of this ruling, Defendants David J. Christie, Alexander Glenn and D.J. Christie Inc.'s Renewed Motion to Stay any Proceedings to Enforce Judgment Pending Post Trial Motions and Appeal (Doc. 347) is denied as moot.

Dated this 8th day of December 2009, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**